JAMES MILLER, Plaintiff-Appellant, v. DONALD ROKITA *et al.*, Defendants-Appellees.

Fifth District   No. 5—83—0866

Opinion filed February 27, 1985.

Edward J. Kionka, of Kionka & Associates, of Murphysboro, for appellant.

David I. Hares, of Strubinger, Keller, Hares and Soraghan, of Belleville, for appellees.

PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiff, James Miller, appeals from a judgment on a jury verdict for defendants, Donald and Steve Rokita, rendered in plaintiff's action for personal injuries incurred in the course of his employment. Plaintiff claimed he was injured when the left rear axle of the 1975 International Harvester Travel-all he was driving became displaced due to a bearing failure.

Plaintiff was a lead worker for the State of Illinois Department of Transportation. He used a State-owned 1975 International Harvester Travel-all to haul tools and crew members to various job locations. Part of his job was to see that the Travel-all was properly maintained and serviced. On June 12, 1979, plaintiff sustained personal injuries when a bearing failure caused the left rear axle of the Travel-all to leave its housing, and, as a result, plaintiff was thrown violently about the vehicle.

The defendants had had a contract with the State of Illinois for repair work to be performed on State vehicles for 12 years prior to the plaintiff's injury. The State had also performed some of its own repairs at a State garage and had sent vehicles to the Rokitas' garage at times.

The Travel-all had been giving trouble prior to the accident and had been in defendants' shop a number of times. Plaintiff testified to a rear brake problem that had occurred in March 1979. One of his crew had volunteered to replace the brake shoes if the State garage was too busy. Such work was commenced but then stopped by one of the State mechanics. How far the work had proceeded was not shown, but it had been completed by State garage mechanics. Plaintiff testified further that the vehicle had worked well until May 1979, when it was taken to defendants' shop for repairs consisting of rebuilding the transmission and rear-end. The axle had been removed in this operation. Plaintiff then drove the vehicle for a few days until he heard rear-end noise. The vehicle was returned to defendants for repairs at that time and at two or three other times between May and

the accident on June 12, 1979. Plaintiff stated that he had complained that the vehicle was smoking from the right rear wheel and that it was not handling properly. He testified that he had seen defendants replace the brake shoes on the right side. On June 12, 1979, plaintiff picked up the truck from defendants. Shortly thereafter, as plaintiff drove to the first job site, the Travel-all began to jump up and down. As a result plaintiff was thrown about and injured.

Steve Rokita testified at trial that he worked on the Travel-all assigned to plaintiff on two occasions. On May 2, 1979, he had rebuilt the transmission and the rear-end of the vehicle. On May 18, 1979, he had worked on the right rear brake. He further testified that the rear-end work did not involve any repair to the left rear axle or bearing.

Since plaintiff's action was founded on charges of negligent repair, the parties called expert witnesses. The plaintiff sought to establish that defendants had failed to install and lubricate the left rear wheel bearings properly during the several repair procedures, and the defendants attempted to show that the failure of the left rear wheel bearing was the result of overload stemming from inadequate design by the manufacturer, International Harvester. Plaintiff's principal expert witness was Mr. Mund, an automobile mechanic of many years' experience, and defendants' principal expert witness was Mr. Armstrong, automobile field mechanic for the State of Illinois.

As might be expected, the expert opinions offered by the parties differed sharply as to the cause of the accident. The plaintiff makes no attempt to discredit the testimony of the defendants' witnesses; rather, he relies on trial errors allegedly committed by the trial court in support of his request for a new trial.

Earl Schuff, shop superintendent for the Department of Transportation, was called by plaintiff. He stated that the left rear axle had come off in the accident and that this had had nothing to do with the right side, which was the side last worked on by defendants. Mr. Schuff examined photos and stated that the axle and bearing had been properly installed. He also stated that both rear wheel bearings had been replaced by the State garage on March 23, 1979.

Mr. Mund testified for plaintiff and gave his opinion that the bearing failure that caused the accident was the result of re-installation of the bearing without proper lubrication and without proper lubrication seals. Mr. Armstrong testified for defendants that the cause of the bearing failure was an overload of the Travel-all that resulted from an improper design of the bearing or the use of a bearing that was too small for the job reasonably to be required of it.

During trial plaintiff raised the question of defendants' use of International Harvester repair manuals. First, Steve Rokita was asked if he had looked at the repair manuals since his deposition had been taken. The defendant answered yes. Later in the trial, the same defendant was recalled to the stand and asked if the repair manuals he had with him in the courtroom were related to the case at bar. The defendant answered no. Plaintiff's expert witness, Mr. Mund, testified that the International Harvester repair manuals were the "bible" of the industry and that he had relied on them to form his opinions. He read portions of the manuals as he explained his testimony to the jury. The plaintiff offered the manuals into evidence. The defendant objected to the manuals as hearsay, and the objection was sustained by the court.

On appeal, the plaintiff asserts that the trial court erred (1) in allowing Herman Armstrong to testify as an expert witness for the defendants, (2) in allowing Mr. Armstrong to give his opinion as to other rear-axle failures on the State's International Harvester vehicles, and (3) in failing to admit the International Harvester repair manuals into evidence.

The trial judge possesses a wide area of discretion in allowing expert testimony that he feels will aid in the understanding of the issues of the case. (*Brendel v. Hustava* (1981), 97 Ill. App. 3d 792, 423 N.E.2d 503; *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 388 N.E.2d 844.) Whether a witness is competent to give an expert opinion is a question of fact for the trial court, and the court's determination will be disturbed only upon a clear showing of abuse of discretion. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645; *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 385 N.E.2d 376.)

Mr. Armstrong had been an automotive field mechanic for the State of Illinois for the past 11 years. Additionally, he had worked in the State garage as a mechanic for 10½ years prior to becoming a field mechanic. He had also worked for various car dealerships in their garages.

The knowledge required of an expert witness may be obtained from study or experience or both. (*Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 323 N.E.2d 418.) A witness whose knowledge is based upon practical experience is no less an expert than one who possesses academic or scientific knowledge. (*Dauksch v. Chamness* (1973), 11 Ill. App. 3d 346, 296 N.E.2d 592.) Accordingly, we cannot find that the trial court abused its discretion by allowing Mr. Armstrong to testify as an expert witness.

■ The second point the plaintiff raises concerns the fact that Mr. Armstrong testified to previous rear-axle failures in some of the other International Harvester Travel-alls owned by the State. Mr. Armstrong testified that he was familiar with the vehicle involved in this case. He stated, without objection, that the bearing had failed on the vehicle in question just as it had in eight to 10 other International Harvester Travel-alls. No objection was made by plaintiff to Mr. Armstrong's testimony that the axle failure was due to a weak design. Furthermore, plaintiff did not object to the defendants' closing argument, in which defendants' counsel stated:

"I think when you get right down to it, they [plaintiff] should take their complaints to International Harvester not to Steve and Don Rokita."

Whether evidence of other similar accidents is admissible is a matter for the exercise of sound discretion by the trial court. (*Stambaugh v. International Harvester Co.* (1982), 106 Ill. App. 3d 1, 435 N.E.2d 729; *Johnson v. Amerco, Inc.* (1980), 87 Ill. App. 3d 827, 409 N.E.2d 299.) It need not be shown that all of the accidents occurred in an identical manner. Substantial similarity is all that is required. *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534; see also E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 401.15 (4th ed. 1984).

■ In any event, failure of counsel to object at appropriate times to the evidence constitutes a waiver of that objection, and the evidence is given its natural probative effect and force even if the evidence is improper or generally incompetent. *Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 418 N.E.2d 1079; *Marth v. Illinois Weather-Seal, Inc.* (1977), 50 Ill. App. 3d 577, 365 N.E.2d 588.

In view of the foregoing, we find that Mr. Armstrong's testimony was properly considered and cannot be termed an abuse of discretion or a trial error.

■ The third issue the plaintiff raises on appeal concerns the admissibility of the International Harvester manuals from which plaintiff's expert witness testified. The repair manuals in this case were prepared and issued by International Harvester and furnished detailed instructions for repairs to the Travel-all model in question, including the rear wheel bearings. Mr. Mund testified that these books were generally accepted as the authoritative manuals for the maintenance of a Travel-all. He used the manuals to form his opinions and was even allowed to read excerpts from them to the jury as part of his testimony.

Plaintiff offered the repair manuals, his exhibit No. 21, into evi-

dence on two separate occasions during the testimony of witness Mund. The first occasion arose early in the direct examination of the witness as follows:

"[Plaintiff's attorney]: Your Honor, we have the two volume manual here, but we would offer into evidence the excerpted material marked as Plaintiff's Exhibit 21 because so much of it is extraneous to the situation we have here.

[Defendants' attorney]: I have objection to this as being hearsay, your Honor.

THE COURT: Objection is sustained except insofar as the witness may say that he has read the material and relied on it."

The second offer, made at the close of Mund's examination, was as follows:

"[Plaintiff's attorney]: Okay. Your Honor, we would again offer the portions of the manual from International Harvester into evidence. That is Plaintiff's Exhibit No. 21, I believe, and further pages regarding the weight of that vehicle or the weight capabilities of that vehicle as part of Plaintiff's Exhibit No. 21.

[Defendants' attorney]: I would object to the manual as being hearsay, your Honor.

THE COURT: Yes. The objection is sustained."

The foregoing colloquies regarding the offer, objection and ruling show the entirety of plaintiff's effort to have the manuals introduced into evidence. The defendants objected that the manuals were hearsay, and they were. So, as far as the court had been taken at that point, its ruling was correct. The plaintiff now contends in his brief that the court erred because the excerpts from the manuals were admissible to show that instructions for the proper installation of the axle and bearings were available to defendants and that defendants therefore had constructive knowledge of this information. Thus, the manuals were admissible as an exception to the hearsay rule in that they furnished standards or instructions that would indicate what was feasible and indicated what defendants should have known and done in their work on the bearing. With this argument we can only agree. *Lockett v. Bi-State Transit Authority* (1983), 94 Ill. 2d 66, 445 N.E.2d 310; *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809; E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 406.5 (4th ed. 1984).

Plaintiff also argues that the manuals were admissible to show defendants' state of mind regarding the correct manner of installation

of the axle and bearings, citing *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738, and *Gass v. Carducci* (1962), 37 Ill. App. 2d 181, 185 N.E.2d 285. However, since there is no indication in the record that defendants knew of or used the manuals in making their repairs, this latter argument is more tenuous.

■ We think the plaintiff's contention regarding error in failure to admit the excerpts from the repair manuals into evidence is not well taken. Although the excerpts from the manuals would have been properly admitted into evidence as an exception to the hearsay rule or, with the proper foundation, to show the defendants' state of mind, they were not offered by the plaintiff for either of those purposes. They were just offered, period. When defendants' objection on the grounds of hearsay was sustained, the plaintiff did not offer the court any further explanation regarding the propriety of the ruling, the alternative theories under which the excerpts would be admissible, or the purpose for which the offer of the excerpts was being made. The court does not have a duty to sort out all possible theories and purposes under which proffered testimony or exhibits might be admissible into evidence and advise the parties of such as it makes its ruling. Its duty extends only to making rulings based upon that which is presented to it. Here, the court was correct as it ruled upon the hearsay objection. Since nothing further was presented on the matter, no error intervened. (*Cf. Sinopoli v. Chicago Rys. Co.* (1925), 316 Ill. 609, 147 N.E. 487 (company rule on operation of car incompetent to show negligence cannot be admitted on question of credibility of witnesses where not offered for that purpose); *Byler v. Asher* (1868), 47 Ill. 101 (it is not error for a court to refuse to admit evidence which constituted no defense to an action, but which may have been proper for the purpose of mitigating damages, when such proof was offered as a defense alone. To have made it admissible, it should have been offered to mitigate damages and not as a defense); see also *Spelina v. Sporry* (1935), 279 Ill. App. 376; *Lemke v. Mueller* (Iowa 1969), 166 N.W.2d 860; 88 C.J.S. *Trial* sec. 76 (1955).) Appropriate and succinct here is the following from *Lemke v. Mueller* (Iowa 1969), 166 N.W.2d 860, 871:

> "We recognize evidence may be clearly inadmissible for one purpose yet the same evidence may be proper and admissible for some other legitimate purpose. However, after defendant's objections had been sustained plaintiff never made known to the trial court the legitimate purpose now claimed for its admissibility."

■ In closing, on plaintiff's final issue, we would comment that

the failure of the court to permit excerpts from the manuals to be introduced as substantive evidence could not have prejudiced the plaintiff in any way. Witness Mund testified at length regarding the proper procedure to be followed by a mechanic in removing the bearings and axle from the particular model of the Travel-all. He repeatedly advised the jury that the methods he was describing were those prescribed by the manuals. Reference to the manuals was made at least 17 times by the witness or his questioner, and, at one point, the witness read verbatim from the manuals. Thus, the jury was broadly advised regarding the correct bearing repair and installation procedure as prescribed in the manuals and had that information in hand as it considered its verdict. Had the excerpts from the manuals been admitted into evidence, they would have been of no further assistance to the jury.

█ The jury that heard the evidence in this case believed that the plaintiff had failed to prove that the accident in question was a result of negligence of the defendants. Such verdict finds ample support in the evidence. We think that the trial court committed no errors that in any way contributed to the verdict of the jury, and we therefore affirm.

Affirmed.

KARNS and KASSERMAN, JJ., concur.