GAIL SALCIK, Plaintiff-Appellant, v. DOMINICK TASSONE, Defendant-Appellee.

First District (3rd Division)   No. 1—91—0958

Opinion filed October 21, 1992.

Jack L. Watson and Michael A. Strom, both of Schaffenegger, Watson & Peterson, Ltd., of Chicago, for appellant.

William J. Harte, Ltd., of Chicago (William J. Harte, Herbert F. Stride, and Joan M. Mannix, of counsel), for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Gail Salcik, a passenger in an automobile driven by Noula Garbis, appeals the judgment for defendant entered after a jury verdict in defendant's favor, in her action for damages for personal injuries sustained when Garbis' vehicle collided with defendant's vehicle.

Plaintiff contends that the trial court erred in (1) barring testimony of a State trooper that the defendant's vehicle laid down 200 feet of skid marks immediately prior to the collision; (2) refusing to admit into evidence, as past recollection recorded, a witness' written statement prepared more than three months after the incident which stated that defendant laid skid marks and was traveling 55 miles per hour before the accident; (3) refusing to give plaintiff's jury instruction that a driver approaching an intersection is required to decrease speed to avoid an accident; and (4) refusing to give plaintiff's issues instruction to the jury, which contained allegations that defendant

failed to decrease his speed when approaching an intersection and was driving at a speed greater than reasonable under the circumstances.

We affirm the trial court because no witness tied the skid marks to defendant's vehicle, the written statement was too remote from the incident to be admitted and the jury was properly instructed.

The accident occurred at approximately 10 a.m. on October 7, 1983, at the intersection of LaGrange Road and 107th Street in Cook County. The weather was sunny and the pavement dry. The car in which plaintiff was a passenger was traveling south on LaGrange Road and was in the process of turning left onto 107th Street when it was hit by defendant's car, which had been traveling north on La-Grange Road in the far right lane. The intersection was controlled by traffic lights which were green for north-south traffic at the time of the accident.

Defendant testified that there was no traffic in front of him and that he first saw the Garbis car when it was stopped in the left lane of southbound traffic. Defendant stated that he was traveling 45 to 50 miles per hour and was approximately 150 feet from the intersection when he realized that the Garbis car had started making a left turn at the intersection. He immediately applied the brakes when he saw the other car turn, but the vehicles collided, coming to rest with defendant's car still in the right lane of northbound traffic and the Garbis car sideways in front of it. Defendant stated that his car did not fishtail or sway when he applied the brakes, nor did he hear the tires squeal. He remembered a person taking him out of his car, but he then lost consciousness.

Plaintiff and Garbis could recall little about the day of the accident, except that Garbis picked up plaintiff at her home. The two apparently lost consciousness at the scene of the accident.

Illinois State Police Trooper Alan Patterson investigated the accident and portions of his evidence deposition were admitted into evidence. He determined from the debris that the accident occurred at a point intersecting the right lane of northbound traffic and the south lane of eastbound traffic. While the Garbis car rested against a traffic signal at the northeast corner of the intersection, he testified that he did not know where defendant's car was located when he arrived upon the scene.

As to other portions of his evidence deposition, Trooper Patterson testified that he observed skid marks in a northbound lane, measured the marks to be 200 feet in length, and thought that the marks appeared fresh because of their dark, hard color with no sign of weath-

ering or other traffic. He further testified that he did not know what the difference might be between skid marks several hours old and those several minutes old. This testimony was barred on plaintiff's motion *in limine* requesting that there be no testimony regarding skid marks.

The trial court did not believe that there was a sufficient nexus between defendant's car and the skid marks to provide the jury with reliable evidence. With no witnesses to affirm the fact that defendant had caused the skid marks, plaintiff was left to mere speculation as to their author.

The trial court considered the officer's inability to locate defendant's vehicle at the scene, his inability to provide criteria for determining the age of the skid marks and the inability of plaintiff to link them with a specific motor vehicle.

The court did acknowledge that the measurement of the marks would be admitted into evidence if plaintiff could provide the appropriate nexus through some other witness. We will later address that opportunity.

■■ The trial court must make a threshold determination of reliability. It has power to admit or exclude evidence and that power includes orders *in limine*. (*Cochran v. Great Atlantic & Pacific Tea Co.* (1990), 203 Ill. App. 3d 935, 561 N.E.2d 229.) Such evidentiary rulings are within the discretion of the trial court, and absent an abuse of that discretion, a reviewing court will not disturb its order.[1] The admissibility of evidence is left to the trial court's discretion based on the evidence's probative value and its prejudicial effect.

---

[1]Examples of Illinois courts of review considering a trial court's possible abuse of discretion include: *City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 554 N.E.2d 1381 (determination of reliability of facts upon which expert testifies not abuse of discretion); *Galowich v. Beech Aircraft Corp.* (1991), 209 Ill. App. 3d 128, 568 N.E.2d 46 (evidence admitted concerning decedent's conduct prior to plane crash not abuse of discretion); *In re Marriage of Malec* (1990), 205 Ill. App. 3d 273, 562 N.E.2d 1010 (admission of partnership agreement although party was not a signatory to agreement and had no standing to enforce its terms not abuse of discretion); *Cochran v. Great Atlantic & Pacific Tea Co.* (1990), 203 Ill. App. 3d 935, 561 N.E.2d 229 (exclusion of lease showing landlord's duty to maintain premises in action between commercial tenant and invitee not abuse of discretion); *Palumbo v. Kuiken* (1990), 201 Ill. App. 3d 785, 559 N.E.2d 206 (use of withdrawn false interrogatory answers used to impeach plaintiff not abuse of discretion); *American Fidelity Fire Insurance Co. v. General Ry. Signal Co.* (1989), 184 Ill. App. 3d 601, 540 N.E.2d 557 (exclusion of letters showing price defendant was willing to sell product for several months after alleged breach as evidence of liquidated damages not abuse of discretion); *Myre v. Kroger Co.* (1988), 176 Ill. App. 3d 160, 530 N.E.2d 1122 (admission of evidence of

Plaintiff cites *Zindrick v. Drake* (1979), 75 Ill. App. 3d 702, 393 N.E.2d 1277, and *Kassela v. Stonitsch* (1978), 57 Ill. App. 3d 817, 373 N.E.2d 608, which allowed police officers to testify to the physical facts observed at the scene of the accident, including accident debris, provided they reached the scene shortly after the accident and were reasonably able to testify that the physical condition at the occurrence was not altered. (*Zindrick*, 75 Ill. App. 3d at 706-07; *Kassela*, 57 Ill. App. 3d at 822.) These courts found that such testimony would aid jurors in determining the point of impact (a question not at issue in the instant case).

Somewhat closer to the heart of the matter, plaintiff cites *Penzin v. Stratton* (1974), 26 Ill. App. 3d 475, 325 N.E.2d 732, where skid marks were considered by the jury as some evidence of excessive speed. However, in that case, the testifying officer had measured the 35-foot skid mark from the tires of defendant's car and that testimony was supplemented by a plethora of eye witnesses who testified as to the skid marks as well as the speed of defendant's motor vehicle.

Skid marks were also considered in *McMinn v. Thompson* (1956), 61 N.M. 387, 301 P.2d 326, where evidence of an 80-foot skid mark was admitted to impeach defendant's claim that he observed the pedestrian plaintiff 35 feet before impact. Plaintiff argues that a similar rule should obtain in this case since defendant testified on direct ex-

---

absence of complaints as to quality of pork rinds was in court's proper discretion); *Behrstock v. Ace Hose & Rubber Co.* (1986), 147 Ill. App. 3d 76, 496 N.E.2d 1024 (exclusion of evidence of amount of authorized bonus for corporate president in action to recover amount of unauthorized bonus not abuse of discretion); *Estate of Galvin v. Galvin* (1983), 112 Ill. App. 3d 677, 445 N.E.2d 1223 (exclusion of evidence of incapacity after judge's determination that the person in question was bizarre but not incompetent was not abuse of discretion); *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 444 N.E.2d 220 (exclusion of eligibility for unemployment compensation as evidence of financial condition not abuse of discretion); *Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 418 N.E.2d 980 (exclusion of testimony that driver was looking in glove compartment prior to accident not abuse of discretion); *Klavine v. Hair* (1975), 29 Ill. App. 3d 483, 331 N.E.2d 355 (evidence admitted that driver was traveling at a "leisurely rate" 600 yards before accident not abuse of discretion); *Nicte-Ha v. Teichert* (1970), 119 Ill. App. 2d 336, 256 N.E.2d 140 (admitted testimony of valuation of jewelry by non-expert not abuse of discretion); *Downing v. Metropolitan Life Insurance Co.* (1941), 314 Ill. App. 222, 41 N.E.2d 297 (a determination of reliability of tests as to whether decedent could have fired gun not abuse of discretion); but *cf. Kelley v. American Motors Corp.* (1985), 130 Ill. App. 3d 662, 474 N.E.2d 814 (prohibiting defendant from putting on reconstruction evidence an abuse of discretion where plaintiff was allowed to provide such evidence).

amination that he first observed the motor vehicle in which plaintiff was a passenger at a distance of 150 feet while the skid marks measured by Trooper Patterson were 200 feet. However, *McMinn*, like *Penzin*, had ample evidence of the connection between the skid marks and defendant's automobile.

Although evidence of skid marks was admitted in *Welch v. Herman* (1949), 337 Ill. App. 322, 326, 86 N.E.2d 284, the jury's verdict for defendant was not disturbed since that court acknowledged that there was no "common knowledge that constitute[d] evidence of the relationship of the speed of a car to the length of the skid marks" and that in the absence of testimony which linked skid marks with excessive speed, the skid marks alone were not sufficient to impose liability upon the defendant.

We recognize that plaintiff intended to rely heavily on skid mark evidence to show that the defendant was so close to the intersection as to constitute an immediate hazard to the Garbis vehicle; that he was speeding in excess of the 55-mile-per-hour speed limit; that he was traveling too fast for conditions; and that he failed to decrease his speed when approaching the intersection. However, we find the trial court properly ruled that there was an inadequate foundation to establish that the skid marks were made by defendant's vehicle.

■ While there may be speculation that the skid marks were made by the defendant, we believe that the trial court did not abuse its discretion in requiring a proper foundation to create the appropriate nexus between defendant's motor vehicle and the skid marks. A reconstruction expert might not have been helpful to plaintiff since the expert testimony which the plaintiff might have sought to introduce would not have met the threshold requirement of reliability as to the creator of the skid marks. *Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020, 355 N.E.2d 214.

Plaintiff next argues that the trial court erred in refusing to admit a written statement given by witness Kelly Hurley three months after the occurrence as past recollection recorded or, alternatively, as impeachment evidence.

Kelly Hurley was a witness to the accident who testified by way of evidence deposition. Hurley was westbound on 107th Street when she was stopped at a red light at the intersection with LaGrange Road. She recalled that the southbound vehicle was poised to make a left turn, although she did not recall seeing the car's turn signal. Hurley saw the impact and stated that, after the impact, one of the cars hit the car in front of her, but she could not recall which car.

Hurley was scheduled to testify at trial, but due to illness, her evidence deposition was taken on October 23, 1990, the day before trial. During the course of the deposition, she stated that while she remembered the accident, she did not recall much else. When she was shown a statement she had given on January 12, 1984, approximately three months after the accident, she determined that it did not refresh her recollection, but testified that the statement was an accurate summation of her recollection of events at that time.

In her statement of January 12, 1984, Hurley estimated defendant's speed to be at least 55 miles per hour and that she had seen long skid marks left on the pavement from defendant's car. The trial court denied plaintiff's request to have those portions of that statement read into evidence, finding that three months was too remote from the accident to meet the requirements of the "past recollection recorded" exception to the hearsay rule.

■ To fall within the past recollection recorded exception, the evidence must meet four requirements:

> "(1) the witness had firsthand knowledge of the recorded event; (2) the written statement was made at or near the time of the event and while the witness had a clear and accurate memory of it; (3) the witness lacks present recollection of the event; and (4) the witness can vouch for the accuracy of the written statement." *Roeseke v. Pryor* (1987), 152 Ill. App. 3d 771, 779-80, 504 N.E.2d 927.

The rationale upon which this hearsay exception relies is that the proffered document contains sufficient circumstantial guarantees of trustworthiness and reliability because the recorded recollection was prepared at or near the time of the event while the witness had a clear and accurate memory of it. Under these circumstances, the reliability of the evidence is perceived to outweigh the inherent testimonial infirmities of hearsay created by the inability of the opposing party to effectively cross-examine. *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 988, 466 N.E.2d 958.

■ Hurley's statement was made over three months after the accident occurred, and we cannot find that the trial court abused its discretion when it denied its admission. In that statement, Hurley recalled facts contrary to the evidence as to the debris, the positioning of defendant's car in the center lane instead of the curb lane, and the area of damage on the Garbis vehicle.

While plaintiff contends that any inconsistencies in Hurley's statement should go to the weight of her testimony and not its ad-

missibility, it is the trial judge who determines whether such hearsay evidence appears sufficiently trustworthy since the opposing party is denied an opportunity to cross-examine the witness. While the inconsistencies in question may not be great, we cannot say that the trial court abused its discretion in determining that three months was too long in this instance to provide reliable evidence.

Plaintiff argues in the alternative that Hurley's statement should have been admitted to impeach Hurley's evidence deposition testimony that she did not recall how fast defendant's car was moving or whether it left any skid marks.

■ Plaintiff, however, has waived this issue since at the time she offered the statement into evidence, she offered it only as past recollection recorded and not alternatively for impeachment of a prior inconsistent statement. When a party offers evidence, it must also offer all possible theories under which the evidence may be admissible since it is not the trial court's duty to sort out such theories; the trial court's duty extends only to ruling upon the arguments presented. *Miller v. Rokita* (1985), 131 Ill. App. 3d 774, 781, 476 N.E.2d 26.

Plaintiff's third issue is whether the trial court erred when it refused to give a jury instruction tendered by plaintiff regarding a driver's duty at an intersection.

■ Plaintiff's tendered instruction partially incorporated section 11—601(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—601(a)), titled "General speed restrictions," which provided, *inter alia*, that a driver has a duty to reduce speed at an intersection and reduce speed where necessary to avoid a collision.

Plaintiff relies upon *Brown v. G & M Distributors, Inc.* (1984), 122 Ill. App. 3d 435, 461 N.E.2d 95, as support. In that case, the defendant made a left turn at an intersection controlled by a traffic light and was struck by plaintiff, who had not reduced his speed upon entering the intersection. The appellate court ruled that the trial court erred when it refused to include language from section 11—601(a) since the statute imposed a duty upon motorists to reduce speed at an intersection to avoid a collision.

We agree that the statute imposes such a duty even when driving under the maximum speed limit. (*Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 405, 487 N.E.2d 798.) Similarly, where defendant admits his failure to reduce speed to avoid an accident, the statute may be a consideration. *Chevrie v. Gruesen* (1991), 208 Ill. App. 3d 881, 567 N.E.2d 629.

However, in the present case, defendant testified that he was traveling approximately 5 to 10 miles per hour below the speed limit and, upon observing the plaintiff's car more than 150 feet from the intersection, he applied his brakes in an effort to avoid a collision, thereby complying with the requirements of the statute. The statute does not impose a duty upon drivers to treat every intersection as a "stop street" nor does it require a degree of divine foreseeability regarding cars poised to cross in front of the driver's vehicle.

Although the trial court denied the instruction, finding that there was "absolutely no testimony in the record to show excessive speed" that would have required such an instruction, we conclude that there was no evidentiary support for plaintiff's version of the facts and this instruction was properly refused.

■ Plaintiff finally argues that the trial court erroneously refused her tendered issues instruction which claims that defendant was negligent in one or more of the following respects:

(1) failing to keep a proper lookout for vehicles which were upon said highway;

(2) failing to keep his vehicle under control;

(3) failing to decrease his speed to avoid endangering the safety of the plaintiff;

(4) driving his vehicle at a rate of speed that was greater than reasonable and proper under the circumstances then and there existing; and

(5) failing to take reasonable steps to avoid collision with the Garbis vehicle.

While a party has a right to have the jury instructed as to its theory, the trial court must determine whether those tendered issue instructions are supported by the evidence, and its decision will not be reversed unless its failure to give an instruction causes undue prejudice to the tendering party. *Ferry v. Checker Taxi Co.* (1987), 165 Ill. App. 3d 744, 749, 520 N.E.2d 733.

Plaintiff stipulated to the withdrawal of her allegation that defendant failed to keep a proper lookout. Regarding plaintiff's contentions that defendant failed to keep his vehicle under control and failed to reduce speed, the court's rulings denying admission of Officer Patterson's and Ms. Hurley's disputed testimony removed any such evidence for consideration. The trial court did instruct the jury on the issue of whether defendant took reasonable steps to avoid the collision.

We find plaintiff was caused no undue prejudice by the trial court's refusal of four of the five allegations in its tendered instruction.

For all of the foregoing reasons, the jury's verdict is affirmed.

Affirmed.

TULLY and CERDA, JJ., concur.